**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION – IN ADMIRALTY**

C. KIM AND SUZANNE ADDINGTON, ERICA ALMOND, PAUL BATTLE, ROBERT BLAKELY, TONY ANTHONY BLANTON, RICHARD BOOTH, JAMES BRAUN, WILLIAM BROWN, TRENT BURGESS, RICHARD BURKE, HERBERT LEE AND SANDY BYRUM, DAVE AND BARBARA CATHER, DANIEL CRAIG, ROBERT AND KAY CREECH, JODY AND LINDA DEAN, RICHARD DENZLER, MICHAEL DONAHUE, JOE DONKEL, PHILLIP ELLISON, ALVIS AND KIMBERLY FAIL, DENNIS FARR, DAVID FOOKS, THOMAS AND CAROLYN GARRAMONE, TODD AND GLORIA GEARDINO, JOHN GEDDIE, DANIEL GEDMAN, GEOFF GENDREAU, MICHAEL AND SANDRA GIBSON, KURT GORRITZ, JOSEPH GRIFFIN, STEPHEN HALE, DALE HALLIWELL, J. GATES HARRIS, KEVIN HENNESSEY, WILLIAM HOWELL, DAN HUTSON, RODNEY JAMES HYSON, CHRIS IOANNOU, CHRISTOPHER AND KIM ISENHOUR, SAM JOHNSTON, DAVID JONES, DONALD JONES, STEVE KARCH, EDWARD KREUL, LLOYD LAMBERT, PEDRAM LEILABADY, MATTHEW LONG, PATRICK LYNCH, JACK AND TERESA MASON, MICHAEL MAVROUDIS, ARTHUR AND RYAN MCCORMICK, ROBERT G. MCCOY, GUSTAVO MIBELLI, RONALD AND KATHERINE MILLER, JEFFREY MOORE, WILLIAM MURRAY, DAVE NELSON, JAMES NOTINE, JOEL PANARA, CHARLES AND SUSAN PAYNE, DAVID PENNINGTON, LAWRENCE PERGERSON, DAN AND CINDY PHILLIPS, HANK POMERANZ, JOHN REDINGTON, ROBERT REICHMEIDER, ALAN REYNER, RICHARD ROZZELLE, MARK AND DIANE SALYER, RONALD SAWONIK, EDWARD SCHRUM, JOHN SCISM, EDWARD SHAUGHNESSY, COLEMAN SHAUGHNESSY, RON SILVER, KATHRYN SIMMONS, TINA AND ERIC SMALL, NORMAN SMITH, ROBERT SMITH, JASON AND FRAN SONDERGAARD, THOMAS STEWART, STEVEN STOPA, JOHN TIMM, DEBORAH TURLINGTON, MARK AND ANITA VESTAL, PATRICK WACHTLER, MATT WATSON, CHRISTOPHER WEBSTER, WILLIAM WEHMER, TONY WILLIAMS, PHILLIP WOODS, ROBERT WORLEY, CHRISTOPHER WRENN, MARK WRIGHT, AND ROBERT YOUNG;

     Plaintiffs,

v.

SOUTHPORT MARINA, INC. ,

　　　　　Defendant.

Case No.

## **COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COME Plaintiffs C. Kim and Suzanne Addington, Erica Almond, Paul Battle, Robert Blakely, Tony Anthony Blanton, Richard Booth, James Braun, William Brown, Trent Burgess, Richard Burke, Herbert Lee and Sandy Byrum, Dave and Barbara Cather, Daniel Craig, Robert and Kay Creech, Jody and Linda Dean, Richard Denzler, Michael Donahue, Joe Donkel, Phillip Ellison, Alvis and Kimberly Fail, Dennis Farr, David Fooks, Thomas and Carolyn Garramone, Todd and Gloria Geardino, John Geddie, Daniel Gedman, Geoff Gendreau, Michael and Sandra Gibson, Kurt Gorritz, Joseph Griffin, Stephen Hale, Dale Halliwell, J. Gates Harris, Kevin Hennessey, William Howell, Dan Hutson, Rodney James Hyson, Chris Ioannou, Christopher and Kim Isenhour, Sam Johnston, David Jones, Donald Jones, Steve Karch, Edward Kreul, Lloyd Lambert, Pedram Leilabady, Matthew Long, Patrick Lynch, Jack and Teresa Mason, Michael Mavroudis, Arthur and Ryan McCormick, Robert G. McCoy, Gustavo Mibelli, Ronald and Katherine Miller, Jeffrey Moore, William Murray, Dave Nelson, James Notine, Joel Panara, Charles and Susan Payne, David Pennington, Lawrence Pergerson, Dan and Cindy Phillips, Hank Pomeranz, John Redington, Robert Reichmeider, Alan Reyner, Richard Rozzelle, Mark and Diane Salyer, Ronald Sawonik, Edward Schrum, John Scism, Edward Shaughnessy, Coleman Shaughnessy, Ron Silver, Kathryn Simmons, Tina and Eric Small, Norman Smith, Robert Smith, Jason and Fran Sondergaard, Thomas Stewart, Steven Stopa, John Timm, Deborah Turlington, Mark and Anita Vestal, Patrick Wachtler, Matt Watson, Christopher Webster, William Wehmer, Tony Williams, Phillip Woods, Robert Worley, Christopher Wrenn, Mark

Wright, and Robert Young (hereinafter, collectively, the "Slip Holders"), by counsel, and as and for their Complaint against Defendant Southport Marina, Inc. (hereinafter, "the Marina") state as follows:

## NATURE OF THE CASE

1. This is a maritime contract action brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Rule 57 of the Federal Rules of Civil Procedure, seeking a declaration of the rights, duties, and obligations of the parties with respect to a Slip/Dry Dockage License Agreement (hereinafter, the "Slip Rental Agreements") and demands made to them by the Marina. A true and accurate copy of an exemplar Slip Rental Agreement, with personal information redacted, is attached hereto as **Exhibit A**.

2. In addition, certain other Slip Holders also seek a declaration of their rights, duties, and obligations regarding demands made to them by the Marina, based upon a Slip Rental Agreement that either was no longer in effect or had never been entered into by those same Slip Holders and the Marina, or demands based on any other alleged oral or implied-in-fact contract that would or could serve as the basis for the Marina's demands.

3. The Marina is located in Southport, North Carolina, near the mouth of the Cape Fear River. The Marina's site includes a protected dredged basin in which a number of floating wooden docks and finger piers are located. The Marina rents berths alongside those docks and piers to its customers. The Slip Rental Agreements are, essentially, each customer's lease for the slip in which their boat is berthed.

4. Notwithstanding the foregoing, a number of Slip Holders moored their vessels at one of the Marina's slips despite never having entered into a Slip Rental Agreement with the

I-1788845.1

Marina, or having once had such an Agreement that had since lapsed without renewal by the Marina by August of 2020.

5.     The event giving rise to this action was Hurricane Isaias, a Category One hurricane that made landfall near Southport, North Carolina during the evening of August 3, 2020 (hereinafter, "the Storm").  The Storm brought high winds and a significant storm surge to Southport, and resulted in substantial flooding into and through August 4, 2020.

6.     On information and belief, the Marina's piers and docks were designed to be capable of withstanding the effects of the Storm, with or without boats being secured in their berths alongside them at the time of the Storm's passage through the area.  To be sure, on information and belief, had they been properly maintained, the Marina's piers and docks would have withstood the effects of the Storm, with or without boats being secured in their berths alongside them.  Indeed, other local marinas and other nearby waterfront piers and docks survived the Storm with little or no significant damage.

7.     Because they were at or near the end of their service life, were poorly maintained, and had been allowed by the Marina to deteriorate and become weakened and unstable, on information and belief, the Marina's piers and docks—and in particular, the pilings holding them in place—were no longer capable of withstanding the predicable and expected forces of a low-order Category One hurricane such as the Storm.

8.     Owing to the Marina's failure properly to maintain its piers and docks, during the Storm, those same piers and docks failed catastrophically.  As a result, virtually every boat moored at the Marina at the time of the Storm's passage through the area was damaged, many of them severely.  Most were piled up (along with the failed piers, docks, and pilings to which they were still securely tied) in a massive jumble along the wooden bulkhead at the Marina's

4

downwind shoreline. Others—a number of which were still tied to their piers—were flung into nearby marshland or deposited high and dry ashore. A few, still tied to their assigned piers, were otherwise scattered within the Marina's basin.

9. Despite its piers and docks being among its most valuable assets and the mechanism by which it generated a substantial amount of its revenue, on information and belief, the Marina neglected to purchase property insurance for all of those structures other than its fuel dock. Because of that, following the Storm's passage through Southport in August of 2020, the Marina found itself in need of rebuilding its piers and docks almost literally from scratch, but without any insurance money to pay for that reconstruction effort.

10. Evidently eager to find a source of money to fund the cost of rebuilding its own uninsured and badly compromised failed dock system—and despite the failure of that system's piers and docks causing well over a million dollars in damage to the boats that had been moored at the Marina at the time of the Storm—by early 2021 the Marina had determined to blame its own customers (the owners of the very same boats its failed piers and docks had damaged) for the failure of its piers and docks.

11. Beginning on or about March 18, 2021, the Marina began executing its plan to blame its customers for its own failure properly to maintain a functional system of piers and docks by sending discrete demand packages to approximately 185 of those customers, including the Slip Holders.

12. The demand packages seek to recover the cost of rebuilding the Marina's failed piers and docks. Most also seek to recover money for certain "salvage" expenses the Marina claims it incurred for the benefit of the Slip Holder's vessels after the Storm. The demand packages generally included two letters, one titled a "Notice of Claim for Salvage – Hurricane

Isaias; Date of Loss: August 4, 2020" and a "Notice of Claim for Damage to Facility - Hurricane Isaias; Date of Loss: August 4, 2020" (hereinafter, "the Demand Packages"). A true and accurate copy of an exemplar Demand Package is attached hereto, with personal information redacted, as **Exhibit B**.

13.     Despite each Slip Holder having asked the Marina to identify the specific damage to its property caused by their respective boat and to note how that damage, if any, resulted from any fault on the part of that Slip Holder, the Marina has, to date, failed to provide the individualized response requested.

14.     Despite each Slip Holder having asked the Marina to specify the marine peril from which their respective boat was saved and to specify the actual marine salvage expenses incurred by the Marina in saving that Slip Holder's vessel from that peril, the Marina has, to date, failed to provide the individualized response requested.

15.     The Marina's justification for sending its Demand Package to the Slip Holders appears to be that their respective boats were present in the Marina's basin when its piers and docks failed and, therefore, they should pay for the repair of those piers and docks, despite the Marina's evident inability to prove that any of the Slip Holder's boats was itself responsible for any of the damage or expenses for which that Slip Holder is being charged.

16.     Although the Demand Package purports to ground the Marina's demands for payment in the terms of the Slip Rental Agreement, nothing in the Slip Rental Agreement makes the Slip Holders the property insurers of the Marina's piers and docks, nor does anything in the Slip Rental Agreement make the Slip Holders liable for any damage caused to the Marina other than that which the Marina can show was caused by each such Slip Holder's own vessel.

6

17.    In view of the foregoing and precisely because the Marina purports to ground its demands for payment in terms of the Slip Rental Agreement, the Slip Holders seek a declaration that none of them is liable to the Marina under the terms of that same Slip Rental Agreement, or under any other oral or implied-in-fact contract, for any loss or damage to the Marina's property following the Storm or for any purported salvage of the Slip Holders' vessels.

## JURISDICTION AND VENUE

18.    This is an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure because this dispute involves contracts to provide wharfage or storage to vessels, which are maritime contracts subject to admiralty jurisdiction.    In addition, the Storm and the injuries claimed by the Marina in its Demand Packages occurred on the navigable waters of the United States or were allegedly caused by vessels on the navigable waters of the United States.

19.    This Court has general personal jurisdiction over the Marina because it is a North Carolina corporation, this lawsuit arises out of contracts between Plaintiffs and the Marina made in the State of North Carolina, and this lawsuit arises out of the Marina's transaction of business in the State of North Carolina.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Marina's principal office is in this district, and a substantial part of the events giving rise to this lawsuit occurred within this district.

## THE PARTIES

21.    Plaintiff Slip Holders C. Kim and Suzanne Addington, Paul Battle, Robert Blakely, Tony Anthony Blanton, Richard Booth, James Braun, Trent Burgess, Richard Burke, Herbert Lee and Sandy Byrum, Daniel Craig, Robert and Kay Creech, Jody and Linda Dean,

Richard Denzler, Michael Donahue, Phillip Ellison, Alvis and Kimberly Fail, Dennis Farr, Thomas and Carolyn Garramone, Todd and Gloria Geardino, John Geddie, Michael and Sandra Gibson, Kurt Gorritz, Dale Halliwell, J. Gates Harris, Kevin Hennessey, William Howell, Chris Ioannou, Christopher and Kim Isenhour, Sam Johnston, David Jones, Donald Jones, Edward Kreul, Pedram Leilabady, Patrick Lynch, Jack and Teresa Mason, Michael Mavroudis, Arthur and Ryan McCormick, Gustavo Mibelli, Ronald and Katherine Miller, Jeffrey Moore, William Murray, James Notine, Joel Panara, Charles and Susan Payne, David Pennington, Lawrence Pergerson, Dan and Cindy Phillips, Hank Pomeranz, John Redington, Robert Reichmeider, Alan Reyner, Richard Rozzelle, Mark and Diane Salyer, Ronald Sawonik, Edward Schrum, John Scism, Edward Shaughnessy, Ron Silver, Tina and Eric Small, Norman Smith, Robert Smith, Jason and Fran Sondergaard, Thomas Stewart, Steven Stopa, John Timm, Mark and Anita Vestal, Patrick Wachtler, Matt Watson, Christopher Webster, William Wehmer, Tony Williams, Phillip Woods, Robert Worley, Christopher Wrenn, and Mark Wright are residents of North Carolina, Virginia, Pennsylvania, Colorado, South Carolina, or Nova Scotia, Canada, each of whom had a Slip Rental Agreement for the vessel(s) identified by the Marina in its Demand Package in effect at the time of the Storm, and each of whom received a Demand Package from the Marina (hereinafter, the "Group A Slip Holders").

22.     Plaintiff Slip Holders Erica Almond, William Brown, Dave and Barbara Cather, Joe Donkel, David Fooks, Daniel Gedman, Geoff Gendreau, Joseph Griffin, Stephen Hale, Kevin Hennessey, Dan Hutson, Steve Karch, Lloyd Lambert, Matthew Long, Robert G. McCoy, Coleman Shaughnessy, Edward Shaughnessy, Kathryn Simmons, and Robert Young are residents of North Carolina, each of whom once had a Slip Rental Agreement for the vessel(s) identified by the Marina in its Demand Package, but that Agreement had expired before the date

I-1788845.1

of the Storm, and each of whom received a Demand Package from the Marina (hereinafter, the "Group B Slip Holders").

23.     Plaintiff Slip Holders Robert and Kay Creech, Kevin Hennessey, Rodney James Hyson, Sam Johnston, Dave Nelson, and Deborah Turlington are residents of North Carolina and Massachusetts, each of whom had never entered into a Slip Rental Agreement for the vessel(s) identified by the Marina in its Demand Package, but each of whom nevertheless received a Demand Package from the Marina (hereinafter, the "Group C Slip Holders").

24.     A few Slip Holders had more than one vessel moored at the Marina, and thus may have had a Slip Rental Agreement in place and effective for one vessel, an expired Slip Rental Agreement for another vessel, and/or no Slip Rental Agreement for another vessel, and are accordingly identified in more than one Group of Slip Holders.

25.     The Marina is a North Carolina Corporation with its principal place of business in Southport, North Carolina.

## FACTUAL BACKGROUND

26.     Prior to August 3, 2020, each of the Group A Slip Holders entered into a Slip Rental Agreement with the Marina, the terms of which provided for, *inter alia*, the Slip Holder's use of a slip at the Marina as a berth for their vessel(s).

27.     Prior to August 3, 2020, each of the Group B Slip Holders had previously entered into a Slip Rental Agreement with the Marina, the terms of which provided for, *inter alia*, the Slip Holder's use of a slip at the Marina as a berth for their vessel(s), but that Slip Rental Agreement had expired by August 3, 2020.

28.     Each of the Group C Slip Holders had never entered into a Slip Rental Agreement with the Marina for the use of a slip at the Marina as a berth for their vessel(s) on or before August 3, 2020.

29.     Section V(d) of the Slip Rental Agreement provides that each Slip Holder shall "[m]ake arrangements for the safe mooring or removal of the Vessel on the approach of a storm and be responsible for the costs to repair of any damage caused by the Vessel to the Marina docks, pilings and/or other boats." Ex. A.

30.     Nothing in the Slip Rental Agreement requires Slip Holders to remove their vessel from the Marina merely because a storm is approaching or expected to pass through the area. Ex. A.

31.     The "Marina Rules," incorporated into the Slip Rental Agreement provide that all vessels "must be properly tied with adequate mooring lines so as to prevent damage to other boats, docks or pilings," and that "[a]ny damage to docks due to improper or loose mooring of boat shall be repaired as [Slip Holder's] expense." *Id.*

32.     The Marina was well aware of the approach of the Storm long before it struck. Indeed, on or about July 30, 2020, the Marina began to send Slip Holders emails containing National Weather Service briefings on the Storm.

33.     In the past, when serious named storms were expected in the area, the Marina would advise Slip Holders that it was not safe for them to remain at the Marina and the Marina would turn off utilities to its piers and docks.

34.     In advance of the Storm in this instance, the Marina did not advise Slip Holders that it was unsafe for them to remain at the Marina and it did not turn off utilities to its piers and docks in advance of the Storm's arrival. In fact, the Marina actually downplayed the Storm's

10

severity in advance of its arrival and did not discourage Slip Holders from riding out the Storm aboard their respective vessels at the Marina.

35.     Although the Marina sent out National Weather Service briefings, no emails were sent instructing the Slip Holders to haul out their vessels or remove them from the Marina in advance of the Storm.

36.     Some Slip Holders had entered into a contract with the Marina, referred to by the Marina as the "Hurricane Club." An exemplar of a true and accurate copy of the Hurricane Club agreement is attached hereto as **Exhibit C**.

37.     Members of the Hurricane Club, which, on information and belief, included Paul Battle, Michael Donahue, J. Gates Harris, William Howell, Michael Mavroudis, Arthur and Ryan McCormick, Lawrence Pergerson, Alan Reyner, Ronald Sawonik, John Scism, Coleman Shaughnessy, Jason and Fran Sondergaard, Mark and Anita Vestal, and Phillip Woods, paid the Marina for the right to use temporary dry hurricane storage space and to have the Marina haul out their vessels, provided that the Marina "is encapsulated within the 3 day landfall projection forecast cone."

38.     Although the Marina was encapsulated within the "3 day landfall projection forecast cone" of the Storm, and although several members of the Hurricane Club specifically asked the Marina to haul their vessel and secure it safely ashore, the Marina failed to haul any of the Slip Holders vessels out of the water in advance of the Storm, including the vessels of those Slip Holders who had paid to be members of the Hurricane Club.

39.     In the evening hours of August 3, 2020, the wind and rain steadily began to pick up in the Southport area in advance of the Storm.

I-1788845.1

40.     Upon information and belief, between 10:00 p.m. and midnight, the Marina's pilings and docks began to fail catastrophically, due principally to failure of the system's old, deteriorated, and poorly set and maintained pilings. Eventually all of the Marina's piers and docks failed.

41.     As a direct result of the failure of the Marina's piers and docks, most of the floating piers and docks, with vessels still attached to them, had floated free and been blown downwind onto one another and the vessels attached to the downwind docks, piling up against the marina's shoreline bulkhead. Others of the Marina's piers floated free and, dragging the vessels still moored to them, ended up in other areas of the Marina's basin, or were blown into marshland in the vicinity of Cottage Creek.

42.     The Slip Holders safely and securely moored their vessels on the approach of the Storm.

43.     Indeed, following the Storm, the majority of the Slip Holders' vessels remained securely moored to the Marina's piers and docks. Exemplar photographs are attached hereto as **Exhibit D**.

44.     Several months after the Storm, the Marina began sending the Slip Holders the Demand Packages.

45.     In the "Notice of Claim for Damage to Facility - Hurricane Isaias; Date of Loss: August 4, 2020" letter received by each Slip Holder (hereinafter, the "Damages Demand"), the Marina cited Section V(d) of the Slip Rental Agreement and stated, "Your vessel, along with others, were left in the basin and caused catastrophic damage to all docks and pilings in the Southport Marina Basin."

46.     In addition, this notice stated:

Based upon the cost of $3,332,646.80 for like kind rebuild of the Southport Marina, we have determined that your vessel was one of 185 in the marina at the time of the storm. The total linear footage of vessels in the marina was 6,531.7 lineal feet. Accordingly, we have determined that your pro-rata share of the Rebuild damages is $[_____].

Ex. A.

47. Thus, each Slip Holder was sent a notice demanding payment based on the length of their vessel, which ranges from demands of approximately $8,500 to demands over $25,000.

48. No information was provided to each individual Slip Holder as to exactly what damage was caused by their vessel.

49. Despite requests on behalf of each individual Slip Holder, the Marina has yet to specify the damage that was caused by any individual vessel belonging to any of the Slip Holders.

50. On information and belief, the Marina cannot identify any damage to any of its property caused by any individual Slip Holder's vessel.

51. In the "Notice of Claim for Salvage – Hurricane Isaias; Date of Loss: August 4, 2020" letter received by each Slip Holder (hereinafter, the "Salvage Demand"), except Robert Blakely, Kurt Gorrtiz, William Howell, Chris Ioannou, Christopher and Kim Isenhour, Eric Hoffman, Sam Johnston, Robert G. McCoy, Coleman Shaughnessy, and Kathryn Simmons, the Marina contends that following the Storm, "all vessels in Southport Marina's basin were then, and afterwards imperiled and required salvage" and that the Marina and its contractors "performed extensive salvage efforts for all vessels."

52. This notice also provided a summary of "salvage services applicable to your vessel," which includes expenses for "Marcol Dredging & Commercial Marine Co.," "Intercoastal Marine Barge/Crane," "Dumpsters/Clean-Up/SR&R Env.," "Security Services," and a deduction for a "SPM Ins Co Payment." Ex. A.

53.     As with the Damages Demand, the Salvage Demand apportioned each Slip Holder a "pro-rata share" based on the length of the Slip Holder's vessel.

54.     However, when a Slip Holder's vessel required salvaging or towing from the Marina, the Slip Holder either organized the tow, or the Slip Holder's insurance company ensured the vessel's recovery through the hiring of a commercial salvor or assistance towing company such as TowBoatU.S.

55.     Despite requests on behalf of each individual Slip Holder, to date, the Marina has not provided the Slip Holders with any information concerning the marine peril to which each vessel was exposed, or what steps the Marina undertook or expenses it incurred to save each "salvaged" vessel.

56.      On information and belief, the Marina cannot identify any marine peril to which each vessel was exposed, or what steps the Marina undertook or expenses it incurred to save each "salvaged" vessel.

## DECLARATORY RELIEF – COUNT I (GROUP A SLIP HOLDERS)

57.     The Slip Holders hereby incorporate by reference Paragraphs 1 through 56 of the Complaint as if fully restated herein.

58.     The Group A Slip Holders have been put on notice by the Marina that the Marina is seeking, under the terms of the Slip Rental Agreement, to recover the costs associated with rebuilding the pilings and docks at its facility, and, in most instances, is seeking recovery related to allegedly salvaging certain Group A Slip Holders' vessels, as set forth in the Marina's Demand Package.

14

59.     The Group A Slip Holders contend that they are not in any way liable to the Marina for the sums demanded from them by the Marina via the Demand Package, under the Slip Rental Agreement or otherwise.

60.     Therefore, an actual and justiciable controversy exists between the Group A Slip Holders and the Marina as to the Group A Slip Holders' obligations arising under the Slip Rental Agreement, or any other oral or implied in fact contract that may be alleged by the Marina as a basis for the claims made in its Demand Packages.

61.     The Slip Rental Agreements pertain to the provision of wharfage and the storing of vessels that were in the navigable waters of the United States.

62.     The Slip Rental Agreements were in effect at the time of the Storm that allegedly caused damage to the Marina's facility, including its pilings and docks.

63.     The Marina has made no demand to any individual Group A Slip Holder claiming that their own vessel was not safely moored or was improperly moored in advance of the Storm.

64.     The Marina cannot identify any specific damage that was caused by each individual Slip Holder.

65.     The Marina is unable to establish that the damage to its facility was not caused by another vessel, some other property, another individual, or a force of nature.

66.     Therefore, under the Slip Rental Agreement, the Group A Slip Holders owe no damages to the Marina related to the damage to the Marina's facility, including its pilings and docks.

67.     There are also no provisions in the Slip Rental Agreement by which the Marina agreed to provide marine salvage services to the Group A Slip Holders.

I-1788845.1

68.     Further, the Salvage Demands do not indicate there was any agreement for the Marina to salve the Group A Slip Holders' vessels.

69.     Absent a marine peril, a salvage contract, and the salving of their vessels, the Group A Slip Holders cannot be held liable for the amounts sought in the Salvage Demand.

70.     There is no oral or implied in fact contract between the Group A Slip Holders and the Marina that would entitle the Marina to the relief sought in the Demand Packages.

**DECLARATORY RELIEF – COUNT II (GROUP B SLIP-HOLDERS)**

71.     The Slip Holders hereby incorporate by reference Paragraphs 1 through 70 of the Complaint as if fully restated herein.

72.     The Group B Slip Holders have been put on notice by the Marina that the Marina is seeking, under the terms of the Slip Rental Agreement, to recover the costs associated with rebuilding the pilings and docks at its facility, and, in most instances, is seeking recovery related to allegedly salvaging certain Group B Slip Holders' vessels, as set forth in the Marina's Demand Package.

73.     At the time of the Storm, any Slip Rental Agreement entered into by the Group B Slip Holders had expired.  Pursuant to the terms of the Slip Rental Agreement, the License between the Marina and the Group B Slip Holders ended on a date certain, and there is no automatic renewal clause.  *See* Ex. A.

74.     The Group B Slip Holders contend that they are not in any way liable to the Marina for the sums demanded from them by the Marina via the Demand Package, under the Slip Rental Agreement, which had expired and was no longer in effect, or otherwise.

16

75. Therefore, an actual and justiciable controversy exists between the Group B Slip Holders and the Marina as to any of the Group B Slip Holders' obligations arising under the expired Slip Rental Agreements.

76. The Slip Rental Agreements pertain to the provision of wharfage and the storing of vessels that were in the navigable waters of the United States.

77. The Marina has made no demand to any individual Group B Slip Holder claiming that their own vessel was not safely moored or was improperly moored in advance of the Storm.

78. The Marina cannot identify any specific damage that was caused by each individual Slip Holder.

79. The Marina is unable to establish that the damage to its facility was not caused by another vessel, some other property, another individual, or a force of nature.

80. Therefore, the Marina cannot establish entitlement to damages, through the Slip Rental Agreements or otherwise, that the Group B Slip Holders owe any damages to the Marina related to the damage to the Marina's facility, including its pilings and docks.

81. There are also no provisions in the expired Slip Rental Agreement by which the Marina agreed to provide marine salvage services to the Group B Slip Holders.

82. Further, the Salvage Demands do not indicate there was any agreement for the Marina to salve the Group B Slip Holders' vessels.

83. Absent a marine peril, a salvage contract, and the salving of their vessels, the Group B Slip Holders cannot be held liable for the amounts sought in the Salvage Demand.

84. There is no oral or implied-in-fact contract between the Group B Slip Holders and the Marina that would entitle the Marina to the relief sought in the Demand Packages.

I-1788845.1

## DECLARATORY RELIEF – COUNT III (GROUP C SLIP HOLDERS)

85.     The Slip Holders hereby incorporate by reference Paragraphs 1 through 84 of the Complaint as if fully restated herein.

86.     The Group C Slip Holders have been put on notice by the Marina that the Marina is seeking, under the terms of the Slip Rental Agreement, to recover the costs associated with rebuilding the pilings and docks at its facility, and, in most instances, is seeking recovery related to allegedly salvaging certain Group C Slip Holders' vessels, as set forth in the Marina's Demand Package.

87.     At the time of the Storm, none of the Group C Slip Holders had entered into a Slip Rental Agreement with the Marina for the vessel identified in the Marina's Demand Package.

88.     The Group C Slip Holders contend that they are not in any way liable to the Marina for the sums demanded from them by the Marina under the Demand Package because there was no Slip Rental Agreement between the Group C Slip Holders and the Marina, or otherwise.

89.     Therefore, an actual and justiciable controversy exists between the Group C Slip Holders and the Marina as to any of the Slip Holders' obligations arising under the Marina's demand for damages.

90.     The Marina has made no demand to any individual Group C Slip Holder claiming that their own vessel was not safely moored or was improperly moored in advance of the Storm.

91.     The Marina cannot identify any specific damage that was caused by each individual Group C Slip Holder.

92.     The Marina is unable to establish that the damage to its facility was not caused by another vessel, some other property, another individual, or a force of nature.

18

93. Therefore, the Marina cannot establish entitlement to damages that the Group C Slip Holders owe any damages to the Marina related to the damage to the Marina's facility, including its pilings and docks.

94. Further, the Salvage Demands do not indicate there was any agreement for the Marina to salve the Slip Holders' vessels.

95. Absent a marine peril, a salvage contract, and the salving of their vessels, the Slip Holders cannot be held liable for the amounts sought in the Salvage Demand.

96. There is no oral or implied-in-fact contract between the Group C Slip Holders and the Marina that would entitle the Marina to the relief sought in the Demand Packages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs C. Kim and Suzanne Addington, Erica Almond, Paul Battle, Robert Blakely, Tony Anthony Blanton, Richard Booth, James Braun, William Brown, Trent Burgess, Richard Burke, Herbert Lee and Sandy Byrum, Dave and Barbara Cather, Daniel Craig, Robert and Kay Creech, Jody and Linda Dean, Richard Denzler, Michael Donahue, Joe Donkel, Phillip Ellison, Alvis and Kimberly Fail, Dennis Farr, David Fooks, Thomas and Carolyn Garramone, Todd and Gloria Geardino, John Geddie, Daniel Gedman, Geoff Gendreau, Michael and Sandra Gibson, Kurt Gorritz, Joseph Griffin, Stephen Hale, Dale Halliwell, J. Gates Harris, Kevin Hennessey, William Howell, Dan Hutson, Rodney James Hyson, Chris Ioannou, Christopher and Kim Isenhour, Sam Johnston, David Jones, Donald Jones, Steve Karch, Edward Kreul, Lloyd Lambert, Pedram Leilabady, Matthew Long, Patrick Lynch, Jack and Teresa Mason, Michael Mavroudis, Arthur and Ryan McCormick, Robert G. McCoy, Gustavo Mibelli, Ronald and Katherine Miller, Jeffrey Moore, William Murray, Dave Nelson, James Notine, Joel Panara, Charles and Susan Payne, David Pennington, Lawrence Pergerson, Dan and Cindy Phillips,

19

Hank Pomeranz, John Redington, Robert Reichmeider, Alan Reyner, Richard Rozzelle, Mark and Diane Salyer, Ronald Sawonik, Edward Schrum, John Scism, Edward Shaughnessy, Coleman Shaughnessy, Ron Silver, Kathryn Simmons, Tina and Eric Small, Norman Smith, Robert Smith, Jason and Fran Sondergaard, Thomas Stewart, Steven Stopa, John Timm, Deborah Turlington, Mark and Anita Vestal, Patrick Wachtler, Matt Watson, Christopher Webster, William Wehmer, Tony Williams, Phillip Woods, Robert Worley, Christopher Wrenn, Mark Wright, and Robert Young respectfully pray for a judgment of this Court declaring:

    (1) the Slip Rental Agreement is a maritime contract, subject to interpretation under federal maritime law;

    (2) Plaintiffs owe no damages to Defendant Southport Marina, Inc. claimed by Southport Marina Inc. in the Demand Packages;

and awarding to the Plaintiffs such other and further relief as this Court may deem just and proper.

Dated:  June 14, 2021                Respectfully submitted,

                                      By:  /s/ Christopher A. Abel
                                        Christopher A. Abel
                                        (VSB No. 31821)
                                        Jeanne E. Noonan
                                        (VSB No. 87863)
                                        Willcox & Savage, P.C.
                                        440 Monticello Avenue, Suite 2200
                                        Norfolk, Virginia 23510
                                        Telephone:  757.628.5500
                                        Facsimile:   757.628.5566
                                        cabel@wilsav.com
                                        jnoonan@wilsav.com
                                        *Counsel for Plaintiffs*

I-1788845.1

/s/ Elizabeth H. Overmann

ELIZABETH H. OVERMANN
Bar No: 31736
McAngus Goudelock & Courie, PLLC
Post Office Box 30516
Raleigh, North Carolina 27622
(919) 719-8200
elizabeth.overmann@mgclaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiffs Jody and Linda Dean, Richard Denzler, Joe Donkel, John Geddie, Geoff Gendreau, Kurt Gorritz, Joseph Griffin, Dale Halliwell, Sam Johnston, Donald Jones, Lloyd Lambert, Pedram Leilabady, Patrick Lynch, Jack and Teresa Mason, Arthur and Ryan McCormick, James Notine, David Pennington, Dan and Cindy Phillips, Robert Reichmeider, Richard Rozzelle, Edward Shaughnessy, Thomas Stewart, Steven Stopa, Christopher Webster, Tony Williams, Robert Worley, Mark Wright, and Robert Young*

/s/ Spencer Beard

SPENCER BEARD
Bar No: 47498
McAngus Goudelock & Courie, PLLC
Post Office Box 12327
Wilmington, North Carolina 28405
(910) 726-1610
spencer.beard@mgclaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiffs David Jones, Edward Kreul, William Murray, Matt Watson, and Tina and Eric Small*

/s/ Justin K. Humphries

Justin K. Humphries
NC Bar # 36833
THE HUMPHRIES LAW FIRM, P.C.
1904 Eastwood Road, Suite 310A
Wilmington, NC 28403
t: (910) 332-0721
f: (888) 290-7817

21

Email: justin@humphriesfirm.law

*Local Civil Rule 83.1(d) Counsel for Plaintiffs C. Kim and Suzanne Addington, Erica Almond, Paul Battle, Robert Blakely, Tony Anthony Blanton, Richard Booth, James Braun, William Brown, Trent Burgess, Richard Burke, Herbert Lee and Sandy Byrum, Dave and Barbara Cather, Daniel Craig, Robert and Kay Creech, J Michael Donahue, Phillip Ellison, Alvis and Kimberly Fail, Dennis Farr, David Fooks, Thomas and Carolyn Garramone, Todd and Gloria Geardino, Daniel Gedman, Michael and Sandra Gibson, Stephen Hale, J. Gates Harris, Kevin Hennessey, William Howell, Dan Hutson, Rodney James Hyson, Chris Ioannou, Christopher and Kim Isenhour, Sam Johnston, Steve Karch, Matthew Long, Michael Mavroudis, Robert G. McCoy, Gustavo Mibelli, Ronald and Katherine Miller, Jeffrey Moore, Dave Nelson, Joel Panara, Charles and Susan Payne, Lawrence Pergerson, Hank Pomeranz, John Redington, Alan Reyner, Mark and Diane Salyer, Ronald Sawonik, Edward Schrum, John Scism, Coleman Shaughnessy, Ron Silver, Kathryn Simmons, Norman Smith, Robert Smith, Jason and Fran Sondergaard, John Timm, Deborah Turlington, Mark and Anita Vestal, Patrick Wachtler, William Wehmer, Phillip Woods, and Christopher Wrenn*

22